# Keller *versus* Bricker.

1. A defendant claiming exemption under the Act of April 9th 1849, must elect to retain such articles as he desires and notify the officer at the time.

2. A constable levied on goods appraised at more than $300 in possession of a defendant, who alleged that enough of them belonged to others to reduce the amount below $300. The question as to legal fraud was between the alleged owners and the constable.

3. If the goods which were actually the defendant's, were less than $300 his claiming " all that belonged" to him was a sufficient election.

4. There is no form for making an election; it is enough if made in such way that the officer ought not to misunderstand.

March 7th 1870. Before Thompson, C. J., Agnew and Sharswood, JJ. Read, J., at Nisi Prius.

Error to the Court of Common Pleas of *Berks county:* No. 51, to January Term 1870.

This was an action of trespass d. b. a., brought June 20th 1867, by Frederick S. Bricker against William C. Keller. The defendant pleaded " Not guilty, justification," &c.

The defendant was a constable, and under an execution against the plaintiff, at the suit of John Gift, levied on and sold goods of the plaintiff, which he claimed to retain under the $300 exemption law. For this the action was brought.

The evidence for the plaintiff was that the defendant made an appraisement of personal property in possession of the plaintiff, it included a wagon, posts and rails, cord wood, &c.; and amounted in the whole to $392.25. The plaintiff asked what was the appraised value of the wagon and other goods above mentioned; and being told $161; he said they did not belong to him: the balance did not amount to $300.

The plaintiff testified that the defendant asked him, after the

[Keller *v.* Bricker.]

appraisement, what he claimed; that he said nothing but what belonged to him; that he had asked the benefit of the $300 law when the execution was served; that he warned the appraisers not to appraise the property which did not belong to him, and named Simpson Becker and Amos Becker as the persons to whom he said it belonged. Afterwards the defendant took a cow, calf and heifer, belonging to him, and sold them under the execution.

Plaintiff gave evidence by other witnesses, that the wagon, &c., did not belong to him.

The defendant testified that when he served the execution, the plaintiff said he claimed the $300. At the appraisement the plaintiff said, the wagon, &c., did not belong to him; "I told him the whole appraisement; that it amounted to $392,25; told him to claim anything, just what he pleased, under the $300; he asked about the wagon, wood posts and rails; he calculated the amount, said, taking out what he didn't own, he wasn't worth $300, and wouldn't claim anything." The defendant gave evidence also for the purpose of showing that the wagon, &c., were the property of the plaintiff.

The court (Woodward, P. J.), after referring to the facts, charged: * * "It is alleged also that notice as to the ownership of the property was given to Keller, the constable, who is the present defendant, and to the appraisers, and that an appraisement of the property as to which ownership was disclaimed, was forbidden by the plaintiff. [It has been proved by both parties, that Bricker declined to select any part of the property to be set out to him, but forbade any sale of any part of it on the ground that the articles included in the levy which belonged to himself amounted in value to less than $300.] Treating the entire property as Bricker's, the constable seized the cow, calf and heifer, and sold them on the 13th of June 1867, for $74.50. The balance beyond the amount of the debt, interest and costs, was tendered to the plaintiff, who refused to accept it." * * *

"On the part of the defendant, the ground is taken that the fact that the articles of which the plaintiff disclaimed ownership were in his possession, made them his property, so far as a creditor's rights were concerned, for all the possible purposes of an execution. [Admitting the ownership to be as the plaintiff has contended, it is still insisted that as he had the articles in his control, with the apparent ownership in him, and, as a creditor would have been unquestionably justified in seizing these articles themselves, such a seizure of property otherwise exempt, was equally justifiable by the fact of his possession of articles the title to which was in other persons. This point, for which the defendant contends, is one to which, so far as the court are aware, the doctrine of legal fraud in the sale of chattels has not been carried.]" The judge stated the law as to legal fraud, and proceeded: ["The court do not

[Keller *v.* Bricker.]

regard the case as one to warrant a peremptory direction in favor of the defendant.]

" This view of the legal question presented, leaves the entire disposition of the cause for the jury. The question as to actual fraud is still open. Did Bricker, in truth and fact, hold no ownership in the property which it is now alleged belonged to Simpson and Amos Becker? Did he own no part of it? Or, was he really the owner, and were the alleged contracts between himself and his brother-in-law merely intended to cover the property, and to afford him the means of shielding it from seizure by his creditors? These are questions on which the jury are required to pass under the evidence. Was there a contract existing in good faith between the plaintiff and Simpson Becker, by which the title to the wagon remained in the latter, with the right to the former to become the owner when he should pay for it? If so, that contract was not subject to be affected by any act of the defendant under Gift's execution, otherwise than by levying on and selling it. He could not assume it to have been sufficient to vest the title in the plaintiff, so as to make it part of his appraisement, and then turn to other property, which he might find it more convenient to take. But if the alleged contract was a sham, and the jury find the existence of any fraudulent contrivance between the parties, which was designed to hinder creditors, and upon the evidence they believe the property to have belonged to the plaintiff, then, to the extent of the value of this article, the cause of action fails. * * * This question the jury are to investigate and settle by their verdict. If there was no actual sale, as the defendant alleges,—if the transaction between the parties was intended to put creditors at defiance, if, in one word, the ownership as well as the possession remained in the plaintiff, the constable was authorized to seize and sell any of the plaintiff's property, and the verdict should be for the defendant. If, however, the sale had been made actually and in good faith, and the title had been transferred to Amos Becker, although a change of possession did not accompany the transfer, the seizing of the property which the jury should find to be included in the plaintiff's exemption claim, would be a trespass, for which the plaintiff would be entitled to recover."

The verdict was for the plaintiff for $59.29.

The defendant removed the record to the Supreme Court, and assigned for error the parts of the charge in brackets. He made other assignments, complaining of the manner in which the court charged as to legal and actual fraud.

*A. S. Sassaman* and *D. Ermentrout,* for plaintiff, referred to Act of April 9th 1849, §§ 1, 2, Pamph L. 533, Purd. 432, 433, pl. 20, 21; Hammer *v.* Freese, 7 Harris 256; Knabb *v.* Drake, 11 Id.

490.   As to fraud: Born *v.* Shaw, 5 Casey 288; Clow *v.* Woods, 5 S. & R. 279; Freeman *v.* Smith, 6 Casey 264; Huey's Appeal, 5 Id. 219; Emerson *v.* Smith, 1 P. F. Smith 90.

*F. B. Lancks* and *E. Shalter*, for defendant in error.—As to the exemption: Commonwealth *v.* Boyd, 6 P. F. Smith 402; Gilliland *v.* Rhodes, 10 Casey 189; Diehl *v.* Holben, 3 Wright 217; Wilson *v.* McElroy, 8 Casey 83; Huey's Appeal, *supra.* As to fraud: Emerson *v.* Smith, *supra.*

The opinion of the court was delivered, March 21st 1870, by

SHARSWOOD, J.—The settled construction of the Act of Assembly of April 9th 1849 (Pamph. L. 533) undoubtedly is, that where a defendant claims the benefit of the exemption provided by that law he must elect to retain such articles as he desires, and such election must be notified to the officer at the time: Hammer *v.* Freese, 7 Harris 255. But the questions in this case are, whether there was not sufficient evidence that the plaintiff below did make such election, and whether it was not fairly submitted to the jury to decide.

The defendant himself, who was examined as a witness, testified that the plaintiff " asked about the wagon, wood, posts and rails; he calculated the amount; said, taking out what he didn't own, he wasn't worth $300, and wouldn't claim anything." Wentzel, who was a witness for plaintiff, said that the defendant told him " Bricker counted up wagon, wood, posts, rails and logs, and subtracted from amount, and told Keller these articles did not belong to him, and the balance did not amount to $300;" and Bricker's testimony was, " Keller asked me after the appraisement what I claimed—if I claimed anything? I said not, except that which belonged to me." There is no discrepancy in any part of the testimony. The whole amount of the appraisement was $392.25. The articles, the ownership of which Bricker disclaimed, were appraised at $161, leaving the value of the goods which Bricker claimed as his own, $231.25. He claimed to retain the whole. What other election could he be required to make? How would he more clearly indicate his determination to retain these goods which he said belonged to him, leaving it to the officer to sell the remainder, if he chose to incur the risk of so doing? Had he done so, Bricker could not have set up any claim to these goods under the exemption law. If they were subject to the execution in consequence of their being in his possession through fraud upon creditors, that was a question between the claimants and the officer. It is strenuously contended that his disclaimer of ownership ought to have been accompanied with information to the officer as to the alleged claimants. Certainly the conduct of a defendant must not appear to have been intended to baffle the

[Keller *v.* Bricker.]

officer. But according to Keller's own account he did give the name of one, and it is rather to be inferred from the evidence that it was well known who they both were. At all events, it does not appear that he was asked for their names. There is no prescribed form for an election to retain by the debtor. It is enough that it was made to the officer in a way in which he could not or ought not to misunderstand it. Men whose property is levied on are generally under some degree of mental excitement. It is not to be expected that their words should be calmly weighed. It is eminently a case in which the jury are to judge under all the circumstances. We think there was ample evidence from which they might infer, that the plaintiff below did elect to retain those of the appraised goods amounting to $231.25, which he asserted to be all that belonged to him.

This we think was fairly submitted to the jury for their determination by the learned judge below. He left the entire disposition of the cause to them. He went further—he left to them the question of actual fraud in Bricker in regard to the goods, the ownership of which he disclaimed. As it was open to the officer to seize and sell these goods—after Bricker's disclaimer—at least so far as his demand of exemption was concerned, it may be questioned whether it was really involved in the issue. Certainly no mere legal fraud arising from retained possession was. The assignment of this is not *secundum regulam*, but if it were, it would not avail the plaintiff in error.

Judgment affirmed.